# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No.: 1:16-cr-00001-JMC-1 |
| v. ) | |
| ) | **ORDER AND OPINION** |
| MACKIE JAMES WALKER JR., ) | |
| ) | |
| Defendant. ) | |

Defendant Mackie James Walker Jr. ("Defendant") is a prisoner currently serving a sentence of 188 months in the Bureau of Prisons ("BOP"). (ECF No. 452.) This matter comes before the court on Defendant's Motion for Compassionate Release (ECF No. 494), pursuant to 18 USC § 3582(c)(1)(A), seeking a reduction of Defendant's prison sentence to time served or, alternatively, to time served with a period of home confinement as a condition of supervised release. For the reasons set forth below, the court **DENIES WITHOUT PREJUDICE** Defendant's Motion for Compassionate Release. (ECF No. 494.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2016, the Grand Jury returned a thirteen-count Indictment against Defendant and his co-Defendants. (ECF No. 3.) The Indictment charged Defendant with one (1) count of conspiracy to possess with intent to distribute oxycodone, one (1) count of use of a communication facility to distribute oxycodone, and two (2) counts of distribution of oxycodone. (*Id*.)

On July 27, 2016, Defendant entered into a Plea Agreement with the Government (ECF No. 206.) As a result of the Plea Agreement, Defendant pleaded guilty to one (1) count of "Conspiracy to Possess with Intent to Distribute and to Distribute Oxycodone, a Schedule II Controlled Substance," a violation of 21 USC §§ 841(b)(1)(A) and 846. (ECF No. 224.) In exchange for the concessions made by the Government in the Plea Agreement, Defendant waived

his rights to contest either the conviction or the sentence in any direct appeal or other post-conviction action under 28 USC § 2255. (ECF No. 206 at 9.)

On May 1, 2018, the court sentenced Defendant to 188 months of imprisonment. (ECF No. 452.) Defendant was initially incarcerated at FCI Loretto. (ECF No. 468.) Thus far, Defendant has served approximately thirty-eight (38) months of his 188-month prison term, about 20% of his sentence.[1] (ECF No. 494-1.)

Through *pro bono* counsel, Defendant filed the instant Motion for Compassionate Release on October 1, 2020. (ECF No. 494.) Defense counsel simultaneously filed a Memorandum of Points and Authorities in support of Defendant's Motion for Compassionate Release contending that Defendant should be released because of his age and preexisting health conditions that place him at a greater risk of complications if he were to contract COVID-19. (ECF No. 494-1.) Defense counsel asserts Defendant's health conditions include Chronic Obstructive Pulmonary Disease ("COPD") and hypertension, which place Defendant at a higher risk of complications from COVID-19. (*Id.*)

On December 17, 2020, the Government filed a Response in Opposition to Defendant's Motion for Compassionate Release. (ECF No. 508.) The Government contends Defendant has failed to demonstrate that he is not a danger to the community's safety or otherwise merits release under the 18 USC § 3553(a) factors. Thus, Defendant's request for a sentence reduction should be denied. (ECF No. 508 at 8.)

At the time of filing the Motion for Compassionate Release, Defendant made no mention of a cancer diagnosis. (ECF No. 494.) However, in recent additional filings (*see* ECF Nos. 516,

---

[1] The time served is counted from May 1, 2018, to the present. Defendant's release date is projected to be August 21, 2031. (ECF No. 494-1.)

517), Defendant mentions his 2019 bladder cancer diagnosis and his recent surgery in March 2021 at FCI Loretto. The treating physician recommended Bacillus Calmett-Guerin ("BCG") immunotherapy followed by maintenance treatments that would not be available to Defendant for months due to scheduling issues concerning availability. (ECF No. 517-2 at 2.) Defendant argues he has not been receiving timely and appropriate treatment for bladder cancer when filing this Motion. (ECF No. 516 at 4.) On December 6, 2020, Defendant tested positive for COVID-19 and cited no complications, and thereafter, Defendant received the COVID-19 vaccination. (ECF No. 510.) Sometime between April 2021 and June 2021, the BOP transferred Defendant from FCI Loretto to FMC Butner. (ECF No. 516.) *See* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 13, 2021) (showing Defendant's current location as FMC Butner).

## II. LEGAL STANDARD

With limited exceptions, the court may not modify a sentence once it has been imposed. 18 USC § 3582(c). One exception is the doctrine of compassionate release, which permits the court to reduce a sentence in extraordinary and compelling circumstances. "As amended by the First Step Act, 18 USC § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

"By its plain language, § 3582(c)(1)(A) requires defendants first to exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Id.*; *see also United States v. Kibble*, 992 F.3d 326, 330 n.2 (4th Cir. 2021).

"Extraordinary and Compelling Reason[s]" for release are—in part—defined in application notes (1)(A-D) of USSG § 1B1.13. These reasons include whether (A) the defendant suffers from a terminal illness, serious medical condition, serious functional or cognitive impairment, or deteriorating mental or physical health due to age which renders them unable to provide self-care; (B) the defendant is a defined age or has served a defined percentage of their sentence; (C) certain family circumstances compel the court; or (D) there exists some "other" extraordinary and compelling reason. *See id*. The policy statement further provides that, "[p]ursuant to 28 USC § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . ." USSG § 1B1.13 cmt. n.3.

As the plain language of § 1B1.13 applies only to motions brought by the BOP on the defendant's behalf, it does not apply to motions for compassionate release brought by the defendant on their own behalf. *United States v. McCoy*, 981 F.3d 271, 281-83 (4th Cir. 2020). While the policy statements "remain helpful guidance" in evaluating a defendant's own motions, courts retain the discretion to make their own independent determinations of what constitutes an "extraordinary and compelling reason[]" under § 3582(c)(1)(A). *Id*; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

After discerning whether extraordinary and compelling reasons exist, the court considers the § 3553(a) sentencing factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of

sentences available; (4) the sentencing range established per the applicable guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id.*

Finally, the court may consider whether a person presents a "danger to the safety of any other person or the community" under the balance of four (4) factors: (1) the nature and circumstances of the offense, with attention to the instant crime's level of violence or involvement with a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed to any person or the community upon the defendant's release. 18 USC § 3142(g).

### III.   ANALYSIS

Upon review, the court observes that Defendant did exhaust his administrative remedies prior to filing his Motion. On March 31, 2020, Defendant submitted a request for compassionate release to the warden of FCI Loretto. (ECF No. 494-1 at 7.) The warden received Defendant's request on April 10, 2020, and subsequently denied it on April 24, 2020. (*Id.*) Thereafter, Defendant appealed the decision through the Administrative Remedy Program, and the warden received that request on July 28, 2020. (*Id.*) The appeal was denied on August 13, 2020, but included a notation that the First Step Act allowed inmates to appeal denials of a reduction in sentence request directly to the sentencing court thirty (30) days after the request from the warden. (*Id.*) The Government does concede Defendant exhausted his administrative remedies before filing his Motion with the court. (ECF No. 508 at 8). Therefore, Defendant has satisfied § 3582(c)(1)(A), as he exhausted administrative remedies and waited thirty (30) days after the last denial from the warden to file the Motion.

Although Defendant exhausted his administrative remedies, his current circumstances do not merit compassionate release. First, the court must determine what constitutes "extraordinary and compelling reasons" under the Sentencing Guidelines. *See* USSG § 1B1.13 (US Sentencing Comm'n 2018). Defendant initially contended his age and medical conditions, including COPD, hypertension, and bladder cancer, place him at a greater risk of complications if he contracts COVID-19. (ECF No. 516.) "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841. Moreover, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Although Defendant here does list his multiple medical conditions, including cancer, that leave him with susceptibility to COVID-19, they do not rise to the level of extraordinary and compelling reasons required for compassionate release.

BOP has updated information to confirm there are no cases of COVID-19 at FMC Butner for either staff or inmates. *See* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 13, 2021). Defendant's request relies on the mere possibility that COVID-19 will spread to his current facility. FMC Butner is an administrative security federal medical center, housing 690 total inmates. *See* Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/buh/ (last visited July 13, 2021). Defendant also has received his COVID-19 vaccination. (ECF No. 516 at 5.) Defendant does not demonstrate a particularized risk of contracting COVID-19 because there are no cases at FMC Butner, Defendant is housed in a medical facility, and Defendant is also vaccinated. Thus, while it might be possible

that COVID-19 may reemerge at FMC Butner, the BOP's data suggests that COVID-19 has been contained at this facility.

While Defendant was housed at FCI Loretto, Defendant claimed he was not receiving proper medical treatment for his bladder cancer. However, the BOP currently reports that Defendant was transferred to FMC Butner, the BOP's medical center for prisoners with special health needs. This relocation alleviates Defendant's concerns of not receiving proper care at FCI Loretto. *See* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 13, 2021). FMC Butner has the capability to treat Defendant's health conditions, including his bladder cancer. There has been no documentation filed by either party to give the court details on Defendant's transfer, current condition, or treatments at FMC Butner. Defendant has not shown that his medical conditions cannot be treated at FMC Butner, that there is a COVID-19 outbreak within the facility, or that he has a particularized risk of contracting COVID-19. Accordingly, Defendant has not demonstrated extraordinary and compelling reasons for compassionate release.

Defendant cites multiple cases in his Motion granting compassionate release to defendants suffering from cancer. However, these cases are distinguishable from Defendant's circumstances, and therefore, fail to be determinative in analyzing Defendant's Motion. For example, *Rosso* found the defendant's bladder cancer along with his other medical conditions constituted "extraordinary and compelling reasons." *United States v. Rosso*, No. 2:98-CR-20007-001, 2021 US Dist. LEXIS 74288, *13 (WD Ark. Apr. 12, 2021). However, the defendant in that case, despite undergoing chemotherapy, had advanced cancer including over twenty (20) tumors, underwent multiple surgeries, used a walker and wheelchair, and had a 25% five-year survival rate. Further, that defendant suffered from incontinence, causing considerable difficulty maintaining his hygiene in an institutional setting. The defendant's incontinence "substantially diminished the defendant's

7

ability to provide self-care within the environment of a correctional facility," a policy statement within the Sentencing Guidelines. USSG § 1B1.13, cmt. n.1(A)(ii). The court also only reduced the defendant's sentence from life imprisonment to 300 months, which considered that the statutory mandatory minimum for third-time drug offenders was amended from his original sentencing of life to twenty-five (25) years. That defendant had already served approximately 277 months at the time of the motion. The remainder of the cases cited by Defendant are also distinguishable. Defendants in those cases had terminal cancer or HIV combined with cancer, required hospitalization for extended periods, and served more than 50% of their sentences.[2]

In the present case, Defendant has served approximately 20% of his sentence, is vaccinated, and resides at a medical facility. Additionally, the BOP has enacted safety protocols and operations to assist in containing the spread of COVID-19.

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES WITHOUT PREJUDICE** Defendant's Motion for Compassionate Release (ECF No. 494).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

July 13, 2021
Columbia, South Carolina

---

[2] *See United States v. Zupnick*, No. 16-50110-JLV, 2021 U.S. Dist. LEXIS 85643 (D.S.D. May 5, 2021); *United States v. Groat*, No. 2:17-cr-104, 2021 U.S. Dist. LEXIS 65194 (D. Utah Apr. 2, 2021); *Avila v. United States*, No. 2:14-cr-108, 2021 U.S. Dist. LEXIS 51455 (E.D. Va. Mar. 18, 2021); *United States v. Smith*, No. 2:15-CR-170 KJM, 2021 U.S. Dist. LEXIS 52433 (E.D. Cal. Mar. 18, 2021); *United States v. Hopkins*, No. 7:17-cr-00085, 2021 U.S. Dist. LEXIS 35429 (W.D. Va. Feb. 24, 2021); *United States v. White*, No. 3:17-cv-00104-2, 2021 U.S. Dist. LEXIS 15318 (M.D. Tenn. Jan. 27, 2021); *United States v. Campbell*, Case No. 91-cr-06093-BLOOM, 2021 U.S. Dist. LEXIS 1469 (S.D. Fla. Jan. 6, 2021).